# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

AGSOUTH GENETICS, LLC and      :
UNIVERSITY OF GEORGIA
RESEARCH FOUNDATION, INC.      :
and FLORIDA AGRICULTURAL
EXPERIMENT STATION n/k/a      :
FLORIDA FOUNDATION
SEED PRODUCERS, INC.      :

     Plaintiffs,      :

vs.      :      CA 09-745-C

LESLIE H. CUNNINGHAM,      :
individually and d/b/a
CUNNINGHAM FARMS,      :

     Defendant.      :

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' motions for summary judgment:

- Defendant Leslie Cunningham's Motion for Partial Summary Judgment, proposed order of judgment, evidentiary submission, narrative statement of undisputed material facts and brief in support, and suggested determinations of undisputed facts and conclusions of law (Docs. 98, 99, 100, 101, and 102), all filed December 17, 2010; plaintiffs' response to Mr. Cunningham's motion (Doc. 111), filed January 24, 2011; and Mr. Cunningham's reply in support of his motion (Doc. 114), filed February 7, 2011; and

- Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims and Amended Counterclaims and brief and evidentiary submission in support (Docs. 106, 107, and 108), all filed

December 24, 2010; Mr. Cunningham's response to plaintiffs' motion (Doc. 112), filed January 24, 2011; and plaintiffs' reply to Mr. Cunningham's response (Doc. 113), filed February 7, 2011.[1]

Upon consideration of the foregoing pleadings and all other relevant pleadings in the file, and for the reasons that follow, the Court **DENIES** Mr. Cunningham's motion for partial summary judgment (Doc. 98) in its entirety and **GRANTS** plaintiffs' motion for summary judgment as to Mr. Cunningham's counterclaims (Doc. 106) in its entirety.[2]

---

[1] The motions for summary judgment are before the Court for disposition, pursuant to 28 U.S.C. § 636(c), on the implicit consent of the parties. *Compare Roell v. Withrow*, 538 U.S. 580, 590 (2003) ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.") *with* Doc. 2 at 1 ("This civil action has been randomly assigned to United States Magistrate Judge William E. Cassady for all purposes including trial. In accordance with 28 U.S.C. § 636(c), the Magistrate Judges of this District Court have been designated to conduct any and all proceedings in a civil case, including a jury or non-jury trial, and to order the entry of a final judgment, upon the consent of all parties. . . . You have the right to have your case reassigned to a United States District Judge for trial and disposition. If you wish to have the case reassigned, you or your attorney need only return the Request for Reassignment to a United States District Judge . . . .") *and* Doc. 28 at ¶ 8 ("This consent action shall be pretried by Magistrate Judge William E. Cassady . . . ."); *see also Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350-51 (11th Cir. 2007) ("Eight months of continual participation in pretrial proceedings justifies the inference of consent from a litigant aware of the need to consent.").

[2] Any appeal taken from this memorandum opinion and order and judgment must be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 2 at 1 ("An appeal from a judgment entered by a Magistrate Judge may be taken directly to the United States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court.").)

On November 13, 2009, plaintiffs filed their Complaint (Doc. 1), in which they seek (1) damages for infringement of the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* (the "PVPA"), pursuant to § 2541(a) (Count I); (2) an injunction pursuant to § 2563 (Count II); damages for violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, (Count III); and treble damages and attorneys' fees (Count IV), against defendants Leslie H. Cunningham and Katherine B. Cunningham,[3] each individually and doing business as Cunningham Farms. Mr. Cunningham filed an answer and counterclaim on December 10, 2009 (Doc. 15), in which he asserted a general denial, affirmative defenses, and a counterclaim titled "Complaint for Abuse of Process."[4] Plaintiffs filed their defenses and

---

[3] On December 11, 2009, Mrs. Cunningham filed an answer (Doc. 17), in which she asserted cross-claims against Mr. Cunningham and noted, first, that although she and Mr. Cunningham were then husband and wife, they were estranged and involved in a divorce proceeding pending under Alabama law, and, second, "[i]f any of the actions or omissions of which [p]laintiffs complain occurred with respect to the use of the AGS 2000 and/or AGS 2485 varieties of wheat, same actions or omissions would have been committed by Leslie Cunningham and not [her]." (*Id.* at 18.) On August 17, 2011, in response to plaintiffs' motion for voluntary dismissal with prejudice of their claims against Mrs. Cunningham (Doc. 63), Mrs. Cunningham's motion for voluntary dismissal of her cross-claims against Mr. Cunningham (Doc. 64), and Mr. Cunningham's responses to the motions (Doc. 67), the Court, pursuant to Rule 41(a)(2), dismissed with prejudice all claims asserted by plaintiffs against Mrs. Cunningham and all cross-claims asserted by Mrs. Cunningham against Mr. Cunningham. (*See* Doc. 70.)

[4] On that same day, Mr. Cunningham also filed a "First Amended Counter-Claim," adding an additional paragraph (Paragraph 19) to his counterclaim (Doc. 16), and, the next day, filed an amended answer, adding an additional affirmative defense (Doc. 18).

answers to Mr. Cunningham's counterclaim, as amended, on December 21, 2009

(Doc. 23).

## SUMMARY JUDGMENT STANDARD

It is well-established that summary judgment is proper—consistent with

Federal Rule of Civil Procedure 56(c)—"if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." [*Celotex*, 477 U.S.] at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant

must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

*Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1312 (M.D. Ala. 2010).

## THE PVPA

Before turning to the pending motions, it is helpful to understand the purpose and structure of the PVPA, the statute at the heart of this dispute. The objective of the PVPA is to provide

> patent protection to breeders of certain plant varieties, who may acquire "the right . . . to exclude others from selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or using it in producing . . . a hybrid or different variety therefrom" for a period of twenty years.

*Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1274 (Fed. Cir. 2006) (quoting 7 U.S.C. §§ 2483(a)(1) & (b)); *see also Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 181 (1985) (the PVPA "protects owners of novel seed varieties against unauthorized sales of their seed for replanting purposes"); *id.* (Congress passed the Act "in order to provide developers of novel plant varieties with 'adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties'") (quoting 7 U.S.C. § 2581). To further this goal, the PVPA provides a cause of action for infringement against any person who undertakes to, *inter alia*, (1) "sell or market the protected variety"; (2)

5

import or export it; (3) multiply or propagate it "for growing purposes"; (4) use it to produce "a hybrid or different variety"; (5) use its—specifically marked—seed "or progeny thereof to propagate the variety"; (6) dispense it "to another, in a form which can be propagated, without notice as to being a protected variety under which it was received"; (7) condition it "for the purpose of propagation," except as to certain activities permitted under the Act; or (8) stock it for an impermissible purpose under the Act.  7 U.S.C. § 2541(a).

"As can be seen from the above language, the PVPA gives the holder of a PVP Certificate rather broad exclusive rights," which (prior to 1994) were subject to "one express, broad exemption"—the allowance of "certain 'farmer-to-farmer' sales of excess saved seed" pursuant to § 2543.  *Delta & Pine Land Co. v. Sinkers Corp.*, 177 F.3d 1343, 1347 (Fed. Cir. 1999).  This exemption was eliminated in a 1994 amendment to the PVPA, which made the Act "consistent with the International Convention for the Protection of New Varieties of Plants of March 19, 1991[, the UPOV Convention], to which the United States is a signatory." H.R. REP. NO. 103-699, at 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 2423, 2423.[5]

---

[5] As explained in the testimony of Kenneth C. Clayton, then-Acting Deputy Assistant Secretary for Marketing and Inspection Services, USDA, before the House Agriculture Committee's Subcommittee on Department Operations and Nutrition:

The American tradition of encouraging farming by private individuals goes back to the founding of our nation.  **Under H.R. 2927 a provision is included which would continue to safeguard the privilege of farmers to**

## I.     Defendant's Motion

### a.  Parties' contentions

Mr. Cunningham requests summary judgment only as to certain paragraphs—51, 53.a, 53.b, and 53.d (only as to the allegations concerning the purported sale of wheat seed in that paragraph)[6]—in Count I of the Complaint

---

*save seed of a protected variety for planting on their own holdings. The sale of seed by farmers to others would be prohibited under H.R. 2927.* However, the privilege of farmers to sell saved seed protected under present law would not be diminished. Rather, sale of saved seed would be subject to authorization by the breeder only for varieties receiving protection after the date of enactment of H.R. 2927. This change in the farmer's exemption is necessary to comply with the 1991 Convention.

I want to make it clear that this Administration wants to continue helping farmers. However, beyond the original purchase price of the seed, no payment is now made to the companies that developed the varieties by those selling saved seed. While this practice has been possible under the current PVPA, it is not compatible with the 1991 Act of the UPOV Convention.

Prohibiting sales of saved seed for replanting is not, however, simply a matter of protecting seed companies. Without encouragement for investment in the development of new varieties, the whole farming community will gradually be put at a disadvantage. Fewer plant varieties with improved characteristics will be developed, leaving farmers to plant outmoded varieties which give lower yields and which succumb to new strains of pests and diseases. Farmers in other countries where investment in new varieties has continued will enjoy a clear competitive advantage.

H.R. REP. NO. 103-699, at 20, 1994 U.S.C.C.A.N., at 2435 (emphasis added).

[6] Those paragraphs provide:

(Doc. 1 at 16-18), which seeks damages for infringement of the PVPA, pursuant

to § 2541(a). As Mr. Cunningham explains, "the purpose of [his] motion is very

simple. [He] believes that, even accepting everything the plaintiffs allege in their

Complaint as true, that he is entitled to partial summary judgment as to the

purported transaction involving [Zelotis] Wofford," an investigator employed by

Mr. Nolan, counsel for plaintiffs (Doc. 101 at 2), asserting that that transaction

---

Without authorization from AGSouth, Defendants sold and offered for sale the protected AGS 2000 and/or AGS 2485 varieties which they had diverted from normal grain channels for sale as seed for reproductive purposes or which they had induced or instigated others to divert from normal grain channels.

(Doc. 1 at ¶ 51.)

Defendants' profits from the unauthorized sale of the AGS 2000 and/or AGS 2485 varieties or a reasonable royalty, whichever is greater.

(Doc. 1 at ¶ 53.a.)

Plaintiffs' lost profits as a result of sales diverted from their authorized dealers.

(Doc. 1 at ¶ 53.b.)

Expenses incurred or reasonably expected to be incurred as a direct result of AGSouth's, UGARF's and FFSP's actions to recover seed or grain grown from Defendants' unauthorized purchase, sale of seed, and/or expenses incurred in identifying and notifying persons who purchased the AGS 2000 and/or AGS 2485 varieties of seed from the Defendants that such seed was not produced by or in accord with the standards of AGSouth and that any grain grown from such seed is protected by the PVPA, cannot be grown for any purpose other than as commercial crop, and cannot be held out as AGS 2000 and/or AGS 2485.

(Doc. 1 at ¶ 53.d.)

"did not constitute an 'infringement' of the plaintiffs' rights under the [PVPA]"

(*id.* at 6.), because

> Mr. Wofford never intended to replant the wheat seed he
> purportedly purchased from Cunningham. He was not a farmer or
> engaged in farming activities at that time. Rather, at the time of the
> transaction, Mr. Wofford was a private investigator tasked with
> attempting to entice farmers into selling him protected wheat seed.
> Indeed, Mr. Wofford apparently destroyed a large majority of wheat
> seed he purportedly purchased from Cunningham. Therefore, the
> Wofford/Nolan transaction did not represent a sale of protected
> wheat for propagation (or replanting).

(*Id.* at 7; *see also* Doc. 114 at 2 (in which Mr. Cunningham asserts that the "one

alleged sale to Wofford does not constitute a violation of the PVPA" because "the

PVPA prohibits the actions delineated in 7 U.S.C. § 2541(a)(1)-(10) [ ] only if those

actions are done for 'replanting purposes.'") (quoting *Asgrow*, 513 U.S. at 181).)

In response, plaintiffs contend that Mr. Cunningham "began his

infringement when he offered to sell, conditioned, stored and agreed to sell the

subject wheat to Mr. Wofford when Mr. Wofford made it clear he intended to

reproduce the seed provided" and "continued when the sale was completed"

(Doc. 111 at 7), citing the transcripts of purported conversations between Mr.

Cunningham and Mr. Wofford.

In a purported November 14, 2008 telephone conversation between Mr.

Wofford and Mr. Cunningham, Mr. Wofford asked Mr. Cunningham whether

the wheat will "come up"—which, plaintiffs insist, gave Mr. Cunningham notice

that Mr. Wofford's intent was to plant the protected seed—to which Mr. Cunningham replied, "It'll come up."  (Doc. 111-1, lines 24-26.)  Plaintiffs further insist that a purported November 17, 2008 in-person conversation between Mr. Cunningham and Mr. Wofford indicates that Mr. Cunningham knew he was selling the protected seed for replanting by Mr. Wofford.  (*See* Doc. 111-2, lines 189-200.[7])

Plaintiffs, moreover, disagree with Mr. Cunningham's view as to the scope of protection under the PVPA.  (*See id.* at 8-9.)  Where Mr. Cunningham asserts that the PVPA's "intent, with regard to the sale of protected seed, is to prevent someone from purchasing the seed, planting the seed, harvesting the seed, and then selling the seed to a third party for planting purposes thus providing the 'owner' a royalty the 'owner' would have realized had the 'owner' sold his, her or its protected variety directly to the third party buyer" (Doc. 101 at 7-8), plaintiffs insist that the PVPA "is not designed to simply protect the royalty lost

---

[7] Mr. Cunningham:  "[Y]ou're not allowed to sell this brand of wheat for somebody to plant and I'm selling you feed wheat, and you can do whatever you want to do."

Mr. Wofford:  "Why is that?  What's the deal on that?"

Mr. Cunningham:  "I guess they've got a patent on it or something."

Mr. Wofford:  "I can plant this and harvest it, right?"

Mr. Cunningham:  "Oh yeah."

on a single sale, but the loss of future sales as well."  (Doc. 111 at 9.)

### b.  Consideration of unauthenticated transcripts

The Court initially must determine whether, for purposes of ruling on Mr. Cunningham's motion, it can consider Exhibits A (Doc. 111-1) and B (Doc. 111-2) to plaintiff's response—unauthenticated transcripts of the alleged November 14, 2008, telephone conversation between, and the alleged November 17, 2008, in-person meeting involving, Mr. Wofford and Mr. Cunningham.   While Mr. Cunningham contends that the transcripts "constitute inadmissible hearsay" (Doc. 114 at 1), and cites *Corwin v. Walt Disney Co.*, 475 F.3d 1239 (11th Cir. 2007), for the unassailable proposition that "inadmissible evidence cannot be used to avoid summary judgment," *id.* at 1249, at summary judgment, "the district court may consider a hearsay statement if the statement could be reduced to admissible form at trial."  *Hill v. Manning*, 236 F. Supp. 2d 1292, 1297 (M.D. Ala. 2002) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)); *see also id.* ("Stated differently, otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage.") (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)); *see also Hosea v. Langley,* No. Civ.A. 04-0605-WS-C, 2006 WL 314454, at *8 (S.D. Ala. Feb. 8, 2006) ("[T]he law is clear that 'inadmissible hearsay may sometimes be considered by a court when ruling on a summary judgment motion,' provided that such hearsay is reducible to

admissible form at trial.") (quoting *Pritchard v. Southern Co. Svcs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)).  Because the transcripts may be authenticated by Mr. Wofford at trial, and are otherwise admissible as statements of a party opponent (Mr. Cunningham), the Court may consider them at this time.  As the court in *Gruppo v. Fedex Freight Systems, Inc.*, Civil Action No. 05-cv-02370-MSK-MEH, 2007 WL 1964080 (D. Colo. June 29, 2007)—considering the defendants' objection to the court's consideration of a transcript on the grounds that the plaintiff failed to establish the authenticity of the transcription—explained:

> A party opposing summary judgment is not required to come forward with evidence in a form that would be admissible at trial, so long as the content or substance of the evidence presented is admissible.  [Because t]he transcript purports to be a record of a recorded conversation [involving at least one of the parties], the [parties'] statements would likely be admissible under Fed. R. Evid. 801(d)(2).  The fact that this evidence is currently in a form that would likely not be admissible at trial does not prevent the Court from considering it at this stage of the proceedings.

*Id.* at *5 & n.4 (citation omitted); *cf. Fitzpatrick v. City of Montgomery*, Civil Action No. 2:07cv528-WHA, 2008 WL 3305125, at *4 (M.D. Ala. Aug. 7, 2008) ("Tape-recorded conversations during an investigation of employment discrimination can be admissible.  The conversation must be authenticated and if the statements are made by parties, the statements can be admissions and not hearsay.  If authentication is accomplished by [the person who made the recording], and the statements [ ] constitute admissions, the tape may be admissible.") (citation

omitted); *Progressive Cas. Ins. Co. v. Chalfant*, Cause No. 109-CV-56, 2010 WL 339090, at *2 (N.D. Ind. Jan. 22, 2010) ("The statements in the transcript are admissible evidence because they are a statement of a party opponent (Chalfant) and thus, by definition, they are not hearsay.") (citing FED. R. EVID. 801(d)(2)(A)); *see also United States v. Hubbard*, 22 F.3d 1410, 1416-17 (7th Cir. 1994) (taped statement of defendant admissible as a statement of a party opponent).

### c. <u>Analysis</u>

Mr. Cunningham's motion for partial summary judgment in essence seeks a ruling from this Court that the sole transaction at issue in this case cannot be the basis for a finding of infringement ***because*** that "transaction did not represent a sale of protected wheat for propagation (or replanting)."  (Doc. 101 at 7.)  Such a ruling—as Mr. Cunningham acknowledges (Doc. 101 at 2)—does not turn on material facts in dispute, but on statutory interpretation and legislative intent. *See, e.g., Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 317 F. Supp. 2d 1188, 1191 (C.D. Cal. 2004) ("When there are no facts in dispute and the only issue raised is a question of statutory interpretation, for example the legislative intent behind a given law, it is appropriate to decide the issue by summary judgment.") (citing *Edwards v. Aguillard*, 482 U.S. 578, 594 (1987)).

As indicated above, the foundation for this requirement—that to violate the PVPA, the purchaser of the protected seed ***must*** replant it or have the

intention of doing so, which is a requirement that does not explicitly appear in the infringement provision of the act, § 2541(a) — appears to be language from the United States Supreme Court's 1995 *Asgrow* decision — the PVPA "protects owners of novel seed varieties against unauthorized sales of their seed *for replanting purposes*." 513 U.S. at 181 (emphasis added). In *Asgrow*, the Supreme Court examined the then-available exemption to the PVPA that "allow[ed] farmers to make some sales of protected variety seed to other farmers," *id.* — so-called "brown bag sales" under the "saved seed exemption." Prior to its 1994 amendment, *see discussion supra*, § 2543 included language providing that

> without regard to the provisions of section 2541[(a)](3) of this title it shall not infringe any right hereunder for a person, whose primary farming occupation is the growing of crops for sale for other than reproductive purposes, to sell such *saved seed* to other persons so engaged, for reproductive purposes, provided such sale is in compliance with such State laws governing the sale of seed as may be applicable.

*Id.* (emphasis added).

The Court determined that "saved seed" in the provision meant "seed *saved for replanting* . . . not merely crop that is stored for later market sale or use as fooder." *Asgrow*, 513 U.S. at 188-89 (emphasis in original). The Court further noted — importantly, for purposes of this motion — that

> [a]s a practical matter, since § 2541[(a)](1) *prohibits all unauthorized transfer* of title to, or possession of, the protected variety, this means that the only seed that can be sold under the proviso is seed that has

been saved by the farmer to replant his own acreage.

*Id.* at 191 (emphasis added and footnote omitted).

This Court is not prepared to grant Mr. Cunningham judgment as a matter of law as to his theory—which he admits "may be novel and/or [ ] contrary to existing authority" (Doc. 101 at 5 n.8)—that to infringe the PVPA, it must be shown that the protected seed sold was intended to be replanted, *see Cook v. United States*, 37 Fed. Cl. 435, 446-47 (1997) (Where a "[d]efendant's motion for summary judgment rests on a contrary interpretation of the law[, it] must be denied."), because, in the very opinion in which the Supreme Court noted that the PVPA "protects owners of novel seed varieties against unauthorized sales of their seed for replanting purposes," *Asgrow*, 513 U.S. at 181, the Court also observed that § 2541(a)(1) of the PVPA "prohibits *all* unauthorized transfer of title to, or possession of, the protected variety." *Id.* at 191 (emphasis added); *cf. Delta & Pine Land Co.*, 177 F.3d at 1347 (noting that the "PVPA gives the holder if a PVP Certificate rather ***broad*** exclusive rights") (emphasis added). Thus, the most logical reading of the Supreme Court's use of "for replanting purposes" at the beginning of its opinion is not as a broad limitation on the protection the PVPA affords, but as the Court setting the stage for its later discussion of the then-applicable "broad exemption," *Delta & Pine Land Co.*, 177 F.3d at 1347, to the infringement provision—"brown bag sales" under the "saved seed exemption," §

2543—the extent of which turned on determining that "saved seed" in the provision meant "seed **saved for replanting**" by that farmer. *Asgrow*, 513 U.S. at 188 (emphasis in original); *see id.* at 191 (noting that because § 2541(a)(1) "prohibits all unauthorized transfer of title to, or possession of, the protected variety, . . . the only seed that can be sold under [the then applicable "farmer-to-farmer" exemption was] seed that has been saved by the farmer to replant his own acreage").

This reading of *Asgrow* not only honors a basic tenet of statutory interpretation that "when interpreting a statute, it is necessary to give meaning to all its words 'so that no words shall be discarded as being meaningless, redundant, or mere surplusage,'" *United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003) (quoting *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991)), it comports with the fact that (1) the infringement provision of the Act fails to mention "replanting" as a prerequisite to infringement and (2) the Court's independent review of the legislative history of the Act—specifically the 1994 amendment to the Act, which broadened the already "rather broad exclusive rights" given to PVP Certificate holders by eliminating "farmer-to-farmer" sales of excess saved seed[8]—provided no indication that an intent to "replant" was

---

[8] The 1994 Amendment deleting the "farmer-to-farmer" or "brown bag sale" exemption applies only to PVP Certificates issued after April 4, 1995, that were not pending on or before that date. *See* Pub. L. No. 103-349, §§ 14(a), 15, 108 Stat. 3144, 3145

ever considered to be a prerequisite to infringement. *Compare Asgrow*, 513 U.S. at 191 (noting that because § 2541(a)(1) "prohibits *all* unauthorized transfer of title to, or possession of, the protected variety") (emphasis added) *with In re Turner*, Nos. NC–07–1306–PaMkMc, 02–46268, 2008 WL 8462952, at *6 (B.A.P. 9th Cir. Mar. 5, 2008) (interpreting § 541(a)(1) of the Bankruptcy Code—property of the estate includes "*all* legal or equitable interests . . ."—and concluding that its "expansive language is not ambiguous—*all means all*") (second emphasis added).

If the Court, moreover, were to adopt Mr. Cunningham's interpretation of the PVPA, it would then consider the transcripts—which may be admissible evidence at trial, *see, e.g., Gruppo*, 2007 WL 1964080, at *5 & n.4—and conclude there is at least evidence (*see* Doc. 111-2, lines 189-200) that could be interpreted by a jury to show that Mr. Cunningham knew he was selling the protected seed for replanting by Mr. Wofford. *See Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998) ("If reasonable persons could differ in their interpretation of the evidence, the motion should be denied. Only when the facts and the reasonable inferences

---

(1994); *see, e.g., Delta and Pine Land Co.*, 177 F.3d at 1347 n.3. The applicable certificates in this case were issued on September 20, 2002 (PVP Certificate No. 200000141 for AGS 2000), *see* Doc. 1 at ¶ 16; Doc. 1-1, and September 16, 2003 (PVP Certificate No. 200300005 for AGS 2485), *see* Doc. 1 at ¶ 17; Doc. 1-5.

are such that a reasonable juror could not reach a contrary verdict may the district court properly grant a motion for judgment as a matter of law.") (citation omitted); *cf. Chatman v. Slagle*, 107 F.3d 380, 381-82 (6th Cir. 1997) (affirming district court's decision not to grant defendants' repeated requests for judgment as a matter of law as to their "novel theory" regarding the inevitable discovery doctrine exception to the exclusionary rule and its impact on plaintiff's ability to bring a § 1983 suit against the defendant state troopers, stating that although "[t]he district court accepted this creative theory[,]" it "held that the question of whether or not the officers would inevitably have discovered the cocaine was a question of fact for the jury to decide").

## II. Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims

### a. <u>Parties' contentions</u>

Mr. Cunningham filed an "Answer and Counter-Claim" (Doc. 15) on December 10, 2009, asserting a "complaint for abuse of process." (*See id.* at 4; *see also* Doc. 108-1.) The concluding paragraph of Mr. Cunningham's counterclaim states that he "also claims punitive damages, attorney's fees, other litigation expenses and costs in this behalf expended, in that Plaintiffs consciously or deliberately engaged in oppression, ***fraud***, wantonness or malice."[9] (*Id.* at ¶ 18

---

[9] *See also* Doc. 15 at ¶ 3 (which defendant also relies on as proof that his counterclaim states an implicit cause of action for misrepresentation: "The ostensible

(emphasis added).)  On December 19, 2009, Mr. Cunningham filed a "First Amended Counter-Claim" (Doc. 16), adding an "entrapment" allegation.  (*See id.* at ¶ 19.)

Plaintiffs move for summary judgment on both the counterclaim and amended counterclaim (*see generally* Docs. 106, 107, 108), asserting "Defendants failed to comply with Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), Fed. R. Civ. P. 9(c), Fed. R. Civ. P. 9(g)."  (Doc. 106 at 11.)  In response, Mr. Cunningham concedes both his explicit counterclaims for abuse of process and entrapment (Doc. 112 at 1-2), but states that "Plaintiffs, however, have not moved and are not entitled to summary judgment as to Cunningham's claim for fraud," (*id.* at 2), asserting, first, that his counterclaim and amended counterclaim "alleged that Plaintiffs' agent made misrepresentations to Cunningham and that Cunningham relied on those misrepresentations" (*id.*), and second—moreover— plaintiffs recognized that a fraud claim exists because their motion cites Rules 9(b), 9(c), and 9(g).  (*See id.* (citing Doc. 106 at 11).)  In reply, plaintiffs assert that Mr. Cunningham's response is merely an "attempt[] to breathe life into [his]

---

purchaser . . . was sent by Plaintiffs to set up a phony purchase to entrap Cunningham into a technical violation of federal statutes . . . by strongly appealing to Cunningham's sense of mercy and compassion[,] and described a relative who was crippled or wheelchair bound and who sat on his front porch and would like to watch green grass grow, and therefore he needed some seed to plant so that his relative could view it in peace.").

counterclaims by asserting a fraud claim" (Doc. 113 at 2), and explain their reference to Rule 9 by pointing to pages 7 and 8 of their brief in support of their motion:

> In the very least, the counterclaimants have not complied with notice pleading requirements under either Fed. R. Civ. P. 12(b)(6) by not setting forth notice of a claim under which relief can be granted. Along the same lines, they have not stated any act with specificity as required by Fed. R. Civ. P. 9(b), nor have they satisfied the requirement that a "condition precedent" be clearly set forth as required by Fed. R. Civ. P. 9(c).

(Doc. 113 at 2-3 (quoting Doc. 107 at 7-8).)

### b. Analysis

Because, first, Mr. Cunningham has conceded his explicit counterclaims for abuse of process and entrapment (Doc. 112 at 1-2), and second, the Court determines that Mr. Cunningham has not alleged a claim for fraud because his counterclaim and amended counterclaim failed to place plaintiffs on notice as to the existence of a cause of action for fraud, it finds that plaintiffs are entitled to summary judgment as to all counterclaims asserted by Mr. Cunningham.

Mr. Cunningham cites *Nolan Bros., Inc. v. United States for Use of Fox Bros. Construction Co.*, 266 F.2d 143 (10th Cir. 1959), in support of his argument that the use of "the word fraud or the word fraudulent" is "not indispensably necessary to the pleading of a cause of action [for fraud]." (Doc. 112 at 2 (quoting 266 F.2d at 145).) He is correct. And as the court in *Nolan Bros.* further explained, "Rule

9(b) [ ] does not require a general express allegation of fraud in which the word fraud is used categorically. Instead, it merely requires that the circumstances constituting fraud shall be pleaded with particularity." 266 F.2d. at 145-46 (citation omitted). Thus, to establish that a claim for fraud exists, this Court must conduct an analysis of the statements alleged by Mr. Cunningham in his counterclaim as amended to determine if the elements for such a cause of action exist. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).

A court "must look beyond labels to the facts alleged in the complaint." *Id.* And "[a]ll that is required is that the pleaded claim afford "the opposing party ***fair notice*** of the nature and basis or grounds of the claim and a ***general indication*** of the type of litigation involved." *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) (quoting *Burlington Indus,, Inc. v. Milliken & Co.*, 690 F.2d 380, 390 (4th Cir. 1982)) (emphasis added). For example, in *Labram*, the Fourth Circuit vacated and remanded a district court's decision dismissing a case for failure to state a claim on which relief could be granted. *See id.* In that case, the applicable state law—Nevada's—did not recognize a separate tort for plaintiff's labeled count, "sexual molestation," but she pled all of the elements of a battery claim. *See id.* The Fourth Circuit, accordingly, held that dismissing the case based on plaintiff's failure to properly label the sexual molestation claim as one for battery was "not warranted ***so long as any needed correction of legal theory will not***

*prejudice the opposing party*."  *Id.* (emphasis added); *see also Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 632 n.8 (6th Cir. 2002) (if construing a pleading liberally rather than technically "***results in no prejudice to the opposing party***, discarding labels in an inartfully drafted complaint in favor of the complaint's reasonable meaning . . . comports with the Federal Rules' intent and serves the ends of justice") (citations omitted and emphasis added); *cf. Nova Design Build, Inc. v. Grace Hotels, LLC*, No. 08 C 2855, 2009 WL 799490, at *3 (N.D. Ill. Mar. 25, 2009) (denying motion to dismiss a counterclaim plaintiffs argued was "not clearly pled and lack[ed] factual details" because defendants "provided sufficient facts to put Plaintiffs on notice of the legal basis for the Counterclaim brought against Plaintiffs").

Here, plaintiffs are prejudiced by Mr. Cunningham's current counsel's effort to resurrect his previous counsel's flawed attempt to assert cognizable counterclaims.[10] Put simply, Mr. Cunningham's new "belief [he was] not required to plead legal theories is belied by the fact [he] advanced [a] specific legal theor[y]" in his counterclaim—for abuse of process.  *Black v. Rhone-Poulenc, Inc.*, 172 F.R.D. 188, 192 n.9 (S.D. W. Va. 1997); *compare id.* (refusing to recognize

---

[10] *See* Doc. 112 at 1-2 ("Cunningham now concedes, as he must, that there is insufficient evidence to support a claim for abuse of process.  Moreover, to the extent that Cunningham's previous counsel attempted to assert a claim for 'entrapment,' Cunningham also concedes that there is no such cause of action.").

that an implied nuisance claim existed in light of the fact that the complaint was very specific as to other causes of action—"Complaint at 'Count One' (alleging strict liability and citing Restatement (Second) of Torts § 519); *id.* 'Count Two' (negligence); *id.* 'Count Four' (medical monitoring") *with* Doc. 15 at 4 (Mr. Cunningham's counterclaim is prominently labeled as a "Complaint for Abuse of Process").  As the court in *Black* concluded, it is "dissembling for [parties] to have asserted some very explicit claims but, for reasons sufficient to themselves, failed to plead others which they now find urgently necessary."  172 F.R.D. at 192 n.9.

The Court also finds support for its position in *Kennedy v. Venrock Associates*, 348 F.3d 584, 594 (7th Cir. 2003), in which the Seventh Circuit—stating that their "conclusion is supported by *Nolan Bros., Inc. v. United States for Use of Fox Bros. Construction Co.*, 266 F.2d 143, 145-46 (10th Cir. 1959)," **relied on by Mr. Cunningham**—held that "[a] principal purpose of requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)," and "[t]hat purpose is thwarted by the filing of a stealth complaint in which allegations of fraud are avoided only to be added later by way of brief or other filing.  **Such an end run should not be permitted**."  *Id.* at 594 (citations omitted and emphasis added).

## CONCLUSION

Plaintiffs are entitled to judgment as a matter of law on all counterclaims asserted by Mr. Cunningham, and their motion (Doc. 106) is due to be **GRANTED**.  In light of this and the Court's denial of Mr. Cunningham's motion for partial summary judgment (Doc. 98), this action will proceed to trial on all claims presented in the Complaint (Doc. 1).  The Final Pretrial Conference in this matter is set for **Tuesday, June 21, 2011**, at **10:00 am** in Mobile, Alabama. Counsel are reminded that they shall prepare a *single* proposed Pretrial Order in the form attached to the undersigned's Standing Order Governing Final Pretrial Conference (Doc. 43-1) and file it no later than **Thursday, June 16, 2011**.

**DONE and ORDERED** this the 13th day of May, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**